UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL E. JAEGER,

                 Plaintiff,          Civil Action No. 16-14447
                                                Honorable Gershwin A. Drain
                                                Magistrate Judge David R. Grand
v.

COMMISSIONER OF
SOCIAL SECURITY,

                 Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [15, 17]**

Plaintiff Michael E. Jaeger ("Jaeger") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [15, 17], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Jaeger is not disabled under the Act is not supported by substantial evidence. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [17] be DENIED, Jaeger's Motion for Summary Judgment [15] be GRANTED IN PART to the extent it seeks remand and DENIED IN PART to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be REMANDED to the ALJ for further proceedings consistent with this Recommendation.

## II. REPORT

### A. Procedural History

On March 10, 2014, Jaeger filed an application for DIB, alleging a disability onset date of May 3, 2011. (Tr. 106-12). This application was denied initially on May 31, 2014. (Tr. 54-57). Jaeger filed a timely request for an administrative hearing, which was held on September 2, 2015, before ALJ Timothy Christensen. (Tr. 29-44). Jaeger, who was represented by attorney Adam Banton, testified at the hearing, as did vocational expert Pauline McEachin. (*Id.*). On October 22, 2015, the ALJ issued a written decision finding that Jaeger is not disabled. (Tr. 16-25). On November 4, 2016, the Appeals Council denied review. (Tr. 1-5). Jaeger timely filed for judicial review of the final decision on December 22, 2016. (Doc. #1).

### B. Framework for Disability Determinations

Under the Act, DIB are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in

the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**C. Background**

*1. Jaeger's Reports and Testimony*

At the time of the administrative hearing, Jaeger was 44 years old, and at 6'1" tall, weighed approximately 260 pounds. (Tr. 33, 132, 136). He lived in a house with his wife. (Tr. 39, 154). He earned a GED and had specialized training in broadcasting. (Tr. 33, 137). Previously, he worked full-time as a warehouse manager until he injured his back in 2010; after that, he worked part-time until May 2011, when he "could not perform most daily tasks without assistance" and his employment was terminated. (Tr. 36, 136-37, 145).

Jaeger alleges disability primarily as a result of back pain. (Tr. 136). He testified that the pain is in his low back, and then "wraps around the hips and into the groin area" before radiating into his legs. (Tr. 35, 39). The pain is made worse with movement, such as bending or twisting, as well as by damp weather. (*Id.*). He spends 40-50% of each day lying on his side in an effort to alleviate the pain. (Tr. 37-38). Jaeger also testified that he cannot sit, stand, or walk for more

3

than 10-15 minutes at a time without severe back pain, and can lift only 5 pounds. (Tr. 35-37, 154). In addition, the pain medication and muscle relaxants he takes cause drowsiness, requiring him to nap 4-6 times per day for 30 minutes at a time. (Tr. 37-38).

In terms of daily activities, Jaeger is generally able to attend to his own personal care, although he sometimes needs assistance dressing and bathing. (Tr. 155). He helps his wife with household chores in a "limited capacity" and is able to prepare simple meals, shop in stores, and drive. (Tr. 39, 156-57). He has difficulty sleeping at night due to pain, however, and has used a cane since having foot surgery in 2011. (Tr. 36, 155, 160).

### 2. *Medical Evidence*

The Court has thoroughly reviewed Jaeger's medical record. In lieu of summarizing his medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

### 3. *Vocational Expert's Testimony*

Pauline McEachin testified as an independent vocational expert ("VE") at the administrative hearing. (Tr. 41-43). The ALJ asked the VE to imagine a hypothetical individual of Jaeger's age, education, and work experience who can perform light work with the following additional limitations: requires a sit-stand option (but by exercising that option will be off task less than 10% of the workday); can occasionally crawl, balance, stoop, crouch, kneel, and climb stairs and ramps; should avoid climbing ladders, ropes, or scaffolds; and should avoid concentrated exposure to temperature extremes. (Tr. 41-42). The VE testified that the hypothetical individual would not be capable of performing Jaeger's past relevant work as a warehouse manager. (*Id.*). However, the VE further testified that the hypothetical individual would be capable of working in the jobs of general office clerk (100,000 jobs nationally),

information clerk (80,000 jobs), and inspector (40,000 jobs). (Tr. 42).

### D. The ALJ's Findings

At Step One of the five-step sequential analysis, the ALJ found that Jaeger has not engaged in substantial gainful activity since May 3, 2011 (the alleged onset date). (Tr. 18). At Step Two, the ALJ found that Jaeger has the severe impairments of degenerative disc disease of the lumbar spine, essential hypertension, and peripheral neuropathy. (*Id.*). At Step Three, he found that Jaeger's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 18-19).

The ALJ then found that Jaeger retains the residual functional capacity ("RFC") to perform light work with the following additional limitations: requires a sit-stand option (but by exercising that option will be off task less than 10% of the workday); can occasionally crawl, balance, stoop, crouch, kneel, and climb stairs and ramps; should avoid climbing ladders, ropes, or scaffolds; and should avoid concentrated exposure to temperature extremes. (Tr. 19).

At Step Four, the ALJ determined that Jaeger is unable to perform his past relevant work. (Tr. 23). At Step Five, the ALJ concluded, based in part on the VE's testimony, that Jaeger is capable of performing a significant number of jobs that exist in the national economy. (Tr. 24). As a result, the ALJ found that Jaeger is not disabled under the Act. (Tr. 25).

### E. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d

591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter

differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion'").

### F. Analysis

In his motion for summary judgment, Jaeger argues that the ALJ's Step Three finding – that his impairments do not meet or medically equal Listing 1.04(A) – is not supported by substantial evidence.[1] (Doc. #15 at 13-18). For the reasons set forth below, the Court finds merit to this argument.

At Step Two, the ALJ found, in relevant part, that Jaeger has the severe impairments of degenerative disc disease of the lumbar spine and peripheral neuropathy. (Tr. 18). Then, at Step Three, with respect to these impairments, the ALJ said only:

> The criteria in Listing 1.00, Musculoskeletal System, more specifically 1.04 Disorders of the Spine, is not satisfied. The medical evidence fails to establish any disorder of the claimant's spine, such as osteoarthritis, herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, or degenerative disc disease that results in compromise of a nerve root or the spinal cord, thereby failing to meet the requirements of Listing 1.04.

(Tr. 19).

Jaeger now argues that the ALJ's Step Three determination "neglects to properly analyze or explain why [his] impairments do not meet or medically equal Listing 1.04(A)." (Doc. #15 at 14). He recognizes, however, that this Court will not overturn an ALJ's decision if the failure to

---

[1] Jaeger also argues that the ALJ failed to obtain a proper expert opinion as to whether his impairments medically equal Listing 1.04(A), and that the ALJ erred in evaluating the opinion of his treating physician. (Doc. #15 at 18-23). Because the Court is recommending remand on other grounds, it declines to address the merits of these arguments. Nonetheless, if, on remand, the ALJ determines that Jaeger's impairments do not meet Listing 1.04(A)'s requirements, the ALJ should ensure that proper consideration is given to both of these issues as well.

articulate Step Three findings was harmless. (*Id.* at 17 (citing *M.G. v. Comm'r of Soc. Sec.*, 861 F. Supp. 2d 846, 858-59 (E.D. Mich. 2012))). Such an error is harmless where "concrete factual and medical evidence is apparent in the record and shows that even if the ALJ had made the required findings, the ALJ *would have* found the claimant not disabled …." *Id.* at 861 (quoting *Rabbers*, 582 F.3d at 657) (internal quotations omitted) (emphasis in original). Here, for the reasons discussed below, the ALJ failed to adequately explain why Jaeger does not meet or medically equal Listing 1.04(A), and the Court cannot find this error harmless.

In order for Jaeger to meet the criteria of Listing 1.04(A), he must show that he has a disorder of the spine (*e.g.*, degenerative disc disease) with:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P., App. 1, Listing 1.04(A). It is well-settled that to "meet" a Listing, a claimant's impairments must satisfy each and every element of the Listing. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.") (emphasis in original); *Blanton v. Soc. Sec. Admin.*, 118 F. App'x 3, 6 (6th Cir. 2004) ("When all the requirements for a listed impairment are not present, the Commissioner properly determines that the claimant does not meet the listing."). In this case, thorough consideration of the objective medical evidence leaves open at least the possibility that Jaeger meets the requirements of Listing 1.04(A).

By way of background, Jaeger saw his primary care physician, Dr. Raafat Issa, on June 10, 2011, complaining of back pain. (Tr. 196). His Vicodin prescription was refilled, and he was advised to return if his symptoms worsened or failed to resolve. (*Id.*). On September 21,

2012, Jaeger told Dr. Issa that he had fallen down his basement stairs the week before and that his low back pain had gotten progressively worse since that time. (Tr. 194). Again, he was given medication refills and advised to return if his pain did not improve. (*Id.*).

On August 8, 2013, Jaeger returned to see Dr. Issa, explaining that his back pain had continued to worsen since he fell down the stairs in 2012. (Tr. 192). Dr. Issa noted that Jaeger's treatment had included multiple steroid injections, physical therapy, traction, and pain medications, which provided – at best – only temporary relief. (*Id.*). On physical examination, Jaeger had mild muscle spasm over the paraspinal area, 4/5 lower extremity motor strength, and straight leg raising was positive at 30 degrees bilaterally. (*Id.*). Dr. Issa indicated that Jaeger would be referred to a pain specialist and a neurologist. (*Id.*).

Jaeger saw Dr. Fernando Diaz at Michigan Head & Spine Institute on October 14, 2013, reporting intermittent low back pain since falling at work in 1995. (Tr. 283). He also indicated that, in June 2010, he awoke with severe low back pain and was treated with physical therapy and traction, which resulted in the onset of radiating left groin pain. (*Id.*). On examination, Jaeger had decreased range of motion in the lumbosacral spine, positive straight-leg raising in the sitting position, 5/5 strength in both his upper and lower extremities, intact sensation in the extremities (except for decreased sensation in the left L5 nerve root distribution), and an antalgic gait. (Tr. 284-85). Dr. Diaz suspected a herniated disc in the lumbar spine and referred Jaeger for diagnostic studies, including x-rays, an MRI of the lumbosacral spine, and an EMG of both lower extremities. (Tr. 285).

X-rays of Jaeger's lumbar spine taken on November 26, 2013, showed mild L5-S1 disc space narrowing and facet hypertrophy. (Tr. 225). A lumbar spine MRI performed the same day showed a broad-based disc herniation with mild canal stenosis at L3-L4; a bulging disc and facet

9

hypertrophy at L4-L5; and a "broad-based central disk herniation" that "contacts and appears to slightly posterior[ly] displace[] the left S1 nerve root" (i.e., "probable left S1 nerve root impingement"). (Tr. 227). EMG testing, also performed on November 26, 2013, showed irritability in a bilateral L5-S1 distribution, indicative of radiculopathy. (Tr. 229-30).

On December 16, 2013, Dr. Diaz reviewed the results of Jaeger's diagnostic testing and assessed "a herniated disc at the L5-S1 level superimposed on degenerative disc disease, disc space narrowing, lateral bilateral foraminal stenosis, nerve root compression, and bilateral radiculopathies." (Tr. 223). He discussed with Jaeger several treatment options – including surgery – but Jaeger opted to continue with conservative treatment measures. (*Id.*).

On February 11, 2014, Jaeger began treating with Dr. Sophia Grias, also of Michigan Head & Spine Institute. (Tr. 218-20). Dr. Grias noted that Dr. Diaz had recommended surgery, but Jaeger declined because Dr. Diaz could not guarantee pain relief. (Tr. 218). On examination, Jaeger had limited range of motion in all planes with pain; 5/5 strength in the extremities (except for 5-/5 strength of his right hip flexor and 4+/5 strength of his left hip flexor); decreased sensation in an L5-S1 distribution on the left; and a negative straight leg raising test. (Tr. 220). Dr. Grias continued Jaeger on Vicodin and Skelaxin and added Elavil "to help with the neuropathic component of his pain and to help him sleep." (*Id.*). Jaeger returned to see Dr. Grias on April 8, 2014, reporting constant back pain that radiated into his groin and testicles. (Tr. 215). On examination, his range of motion was limited with flexion and extension with pain, and he had 5-/5 strength of his right hip flexor and 4+/5 strength of his left hip flexor; decreased sensation in an L5-S1 distribution on the left; and a negative straight leg raising test. (Tr. 216). At follow-up visits to Dr. Grias between June 2014 and July 2015, Jaeger continued to report radiating back pain, with weakness in his right leg; his examinations were generally

consistent in terms of strength and sensation; and his medications were repeatedly adjusted. (Tr. 262-72, 314-22).

On July 22, 2015, Dr. Grias completed a Physical Residual Functional Capacity Questionnaire indicating that Jaeger is limited to walking ½ of a city block; sitting or standing for 20 minutes at a time and for less than two total hours out of an eight-hour workday; lifting 10 pounds rarely and less than 10 pounds occasionally; rarely twisting and stooping; occasionally climbing stairs; and never crouching, squatting, or climbing ladders. (Tr. 231-34). Dr. Grias further indicated that Jaeger needs to walk for eight minutes every 30 minutes throughout the workday; needs the option to shift positions from sitting to standing at will; will be off task 20% of the day; will require unscheduled breaks; and will likely be absent from work due to his impairments or treatment more than four days per month. (*Id.*).

Considering all of these facts, the Court finds that the record contains evidence which at least arguably satisfies each of the criteria of Listing 1.04(A), and it is unclear why the ALJ reached a contrary conclusion. First, the ALJ concluded that Jaeger suffers from the severe impairment of degenerative disc disease of the lumbar spine. (Tr. 19; *see also* Tr. 216, 220, 223, 264). Thus, there is no dispute that Jaeger showed he suffered from a "disorder of the spine." 20 C.F.R. Pt. 404, Subpt. P., App. 1, Listing 1.04(A). Moreover, contrary to the ALJ's conclusory finding,[2] there is evidence suggesting that this condition results in "compromise of a nerve root or the spinal cord." *Id.* Specifically, a November 2013 lumbar spine MRI showed a "broad-based central disk herniation" that "***contacts and appears to slightly posterior[ly] displace[] the***

---

[2] As set forth above, the entirety of the ALJ's Step Three analysis consists of a statement that the "medical evidence fails to establish … degenerative disc disease *that results in compromise of a nerve root or the spinal cord*, thereby failing to meet the requirements of Listing 1.04." (Tr. 19 (emphasis added)). Thus, it appears that "nerve root compromise" is the only element of Listing 1.04(A) that the ALJ did not believe was satisfied.

*left S1 nerve root*" (i.e., "*probable left S1 nerve root impingement*"). (Tr. 227 (emphasis added)). Moreover, after reviewing these MRI results, Dr. Diaz assessed "a herniated disc at the L5-S1 level superimposed on degenerative disc disease, disc space narrowing, lateral bilateral foraminal stenosis, *nerve root compression*, and bilateral radiculopathies."[3] (Tr. 223 (emphasis added)). Thus, both of these criteria of Listing 1.04(A) appear to be satisfied.

To the extent the Listing requires not just a showing of nerve root compression, but "nerve root compression *characterized by* neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)," 20 C.F.R. Pt. 404, Subpt. P., App. 1, Listing 1.04(A) (emphasis added), there also is evidence in the record at least tending to suggest that these requirements are satisfied. For example, Jaeger complained on multiple occasions of pain radiating to his hip, groin, thigh, and testicles (Tr. 215, 262, 265, 267, 270, 283, 314, 317, 320), as well as numbness and/or weakness in his lower extremities (Tr. 206, 212, 262, 265, 270, 314), which at least arguably evidences neuro-anatomic distribution of pain. In addition, the record is replete with evidence of a limited range of motion of Jaeger's spine. (*E.g.*, Tr. 216, 220, 263, 268, 271, 284, 315, 318, 321). There also is evidence of motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss. (Tr. 192, 216, 220, 285). And, the record contains evidence of more than one positive straight-leg raising test. (Tr. 192, 284). In summary, in light of the foregoing, the ALJ's conclusion that Jaeger failed to

---

[3] The Commissioner asserts that "while Dr. Diaz assessed nerve root compression in December 2013, the basis for the diagnosis is unclear" because the underlying MRI results showed only nerve root *displacement*, not nerve root *compression*. (Doc. #17 at 13-14). The problem with this argument, however, is that the ALJ drew no such distinction and, indeed, provided no explanation whatsoever as to why – despite Dr. Diaz's assessment of nerve root "compression" – he found no evidence of nerve root compromise.

satisfy Listing 1.04 because he did not present evidence of "degenerative disc disease that results in compromise of a nerve root or the spinal cord" (Tr. 19), is not supported by substantial evidence.

The Commissioner attempts to minimize the evidence discussed above, characterizing the basis of Dr. Diaz's diagnosis of nerve root compression as "unclear"; claiming that only "*decreased sensation* – not pain" is documented in the record; asserting that muscle weakness was only observed from February 2014 through August 2014; and noting that the record contains both positive and negative straight-leg raising tests. (Doc. #17 at 13-16 (emphasis in original)). While the Court acknowledges this evidence and notes that, in some respects, the medical evidence is somewhat equivocal with respect to certain criteria of Listing 1.04(A), the problem is that the ALJ's entire Step Three analysis consists of a single sentence that says only that the "medical evidence fails to establish … degenerative disc disease *that results in compromise of a nerve root or the spinal cord*, thereby failing to meet the requirements of Listing 1.04." (Tr. 19 (emphasis added)). Indeed, despite citing medical evidence of complaints of radiating pain; decreased sensation, strength, and range of motion; and bilateral positive straight-leg raising tests (Tr. 20-21), the ALJ failed to provide any analysis as to why the evidence discussed above did not satisfy the criteria of Listing 1.04(A).[4] And, viewing the record as a whole, it appears that

---

[4] The Commissioner also argues that the opinion of state agency physician Twaide Langham, D.O., who reviewed Jaeger's file and assessed his RFC without finding that any Listing was met, "is substantial evidence supporting the ALJ's determination that [Jaeger] did not meet or medically equal any Listing, including 1.04." (Doc. #17 at 16 (citing Tr. 49-50)). The problem, however, is that although Dr. Langham reviewed Jaeger's November 2013 x-ray and EMG results, there is no indication that he reviewed the MRI results or Dr. Diaz's subsequent assessment of nerve root compression. (Tr. 47-48). Moreover, the ALJ made no mention of Dr. Langham's opinion in reaching his Step Three conclusion.

had the ALJ more thoroughly considered Jaeger's back impairment in light of this Listing, he could very well have determined that Jaeger meets or medically equals[5] its criteria.

For these reasons, the Court cannot conclude that the ALJ's Step Three determination is supported by substantial evidence. Regardless of how the ALJ might ultimately decide Jaeger's claim, at this juncture, the Court cannot say that, if the ALJ had made the required findings at Step Three, he necessarily *would have* found that Jaeger does not meet or medically equal the relevant Listing. And, if he does find that the evidence establishes that Jaeger meets or medically equals Listing 1.04(A), Jaeger would be presumptively entitled to benefits. *See Christephore v. Comm'r of Soc. Sec.*, 2012 WL 2274328, at *6 (E.D. Mich. June 18, 2012). Thus, the ALJ's error was not harmless, and remand is appropriate. *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011).

## III. CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment [17] be DENIED, Jaeger's Motion for Summary Judgment [15] be GRANTED IN PART to the extent it seeks remand and DENIED IN PART to the extent it seeks an award of benefits, and that this case be remanded to the ALJ for further proceedings consistent with this Recommendation.

Dated: October 5, 2017　　　　　　　　　　　　s/David R. Grand
Ann Arbor, Michigan　　　　　　　　　　　　DAVID R. GRAND
　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

---

[5] Even if Jaeger cannot demonstrate that he meets the criteria of Listing 1.04(A), he can still satisfy his burden at Step Three by proving that he has an impairment (or combination of impairments) that medically equals this Listing. To do so, he must "present medical evidence that describes how [his] impairment is equivalent to a listed impairment." *Lusk v. Comm'r of Soc. Sec.*, 106 F. App'x 405, 411 (6th Cir. 2004). This means that Jaeger must present medical findings showing symptoms or diagnoses equal in severity and duration "to *all* the criteria for the one most similar listed impairment." *Daniels v. Comm'r of Soc. Sec.*, 70 F. App'x 868, 874 (6th Cir. 2003) (internal quotations omitted).

**NOTICE TO THE PARTIES REGARDING OBJECTIONS**

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 5, 2017.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager
